**In re BOSWELL.**

**Ex parte MacARTHUR.**

District Court, S. D. New York.
May 14, 1934.

232

Lewis H. Saper, of New York City, for receiver and trustee.

Albert W. Fribourg, of New York City (Louis M. Fribourg, of New York City. of counsel), for judgment creditor.

PATTERSON, District Judge.

The controversy is whether a judgment creditor has a valid lien on certain personal property owned by the bankrupt. The facts are not in dispute. One MacArthur recovered judgment against the bankrupt for $2,-223.78 on November 23, 1933, on a claim for unpaid rent. Execution was issued and a levy on the bankrupt's furniture made on December 11, 1933. By written stipulation between the judgment creditor and the bankrupt on January 15, 1934, it was arranged that the judgment should be satisfied on payment of $1,700, together with the further sum of $250 a month for rent to accrue in the future. The $1,700 was to be paid in installments; $750 at once, $250 in seven days, and the balance in monthly installments of $58 each. The levy was to remain in force, but sale under it postponed so long as the bankrupt should make the stipulated payments. In case of default the agreement was "to immediately become null and void and of no effect," and MacArthur was to have the right to enforce the payments due under the stipulation.

The bankrupt made payments totalling $1,140, but as early as February was in default both as to the monthly payments of $58 and as to the current rent. Accordingly MacArthur set April 20, 1934, as the date for sale under the levy, but on April 19 the bankrupt filed a voluntary petition. A receiver was appointed. A representative of the receiver went to the premises and exhibited to the marshal acting under MacArthur's execution a copy of the order of appointment, whereupon the marshal turned the goods over to the receiver and went away.

MacArthur promptly brought a proceeding in the bankruptcy court to establish the validity of his lien, but the referee concluded that the lien under the levy had been lost, and refused to give relief. I am of opinion that this disposition of the case was erroneous.

The levy was unquestionably valid at the outset. It created a lien in favor of the judgment creditor. The lien came into being more than four months before bankruptcy, and therefore was unaffected by the provisions of section 67f of the Bankruptcy Act (11 US CA § 107 (f).

It is argued that the levy became dormant by virtue of what happened later and was thus invalidated. It may be granted that for a span of time commencing with the making of the written agreement the dominant purpose of the execution creditor was to hold security for his claims rather than to realize forthwith on his judgment, and that the legal effect of such purpose would be to postpone his lien in favor of purchasers and subsequent execution creditors, including of course the trustee in bankruptcy of the judgment debtor. But prior to bankruptcy the execution creditor had once more set his process in motion and had taken the necessary steps to have the goods sold promptly. He thus made good his original rights under the levy, no one having acquired a lien on the goods in the interim, and his interest was prior to that of the trustee in bankruptcy. The rule is that where a levy has become dormant a direction later to the sheriff or marshal to proceed with the sale will preserve the priority of the lien acquired by the levy over all other liens and rights acquired after such direction. The only effect of the dormancy is to let in other creditors and purchasers obtaining rights during dormancy. Minnich v. Gardner, 292 U. S. 48, 54 S. Ct. 567, 78 L. Ed. 1116, decided by the Supreme Court April 2, 1934, and not yet reported; In re Zeis, 245 F. 737 (C. C. A. 2); In re Schwab Printing Co., 59 F.(2d) 726 (C. C. A. 7). The law in New York is to this effect. Sage v. Woodin, 66 N. Y. 578; Miller v. Kosch, 74 Hun, 50, 26 N. Y. S. 183. The facts in the Minnich Case were quite similar to those presented here, and further discussion of this feature is unnecessary.

It is also urged that the marshal's surrender of custody to the receiver in bankruptcy was an abandonment of the levy. The marshal seems to have deferred to the receiver with a meekness rare in such situations. But the surrender occurred after the filing of the petition in bankruptcy and was in favor of the receiver, who is deemed to represent all interest and to prejudice none. Whatever the thought in the mind of the marshal, the execution creditor never intended to waive his levy. Under the conditions there was no abandonment of the lien. In re Endlar, 192 F. 762 (C. C. A. 1); Remington on Bankruptcy, § 408.

It remains to consider the amount for which the levy may be enforced. The judgment was for $2,223.78, but the effect of the agreement was to reduce the amount, finally and not conditionally, to $1,700. On this figure $1,140 was paid by the bankrupt, leaving as the amount of the lien $560. It is clear that the future rent payable by the bankrupt cannot be taken as secured by the levy. Any stipulation by the parties to have the levy cover such debts or liabilities to accrue in the future is void as to creditors later acquiring liens and as to the trustee in bankruptcy of the judgment debtor.

The order of the referee will be reversed and the levy held valid and enforceable to the extent of $560.